**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

DORCAS L.,

                Plaintiff,

                                        8:25-CV-625
    v.                                           (DJS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**APPEARANCES:**                   **OF COUNSEL:**

COLLINS, HASSELER &         LAWRENCE D. HASSELER, ESQ.
SIMSER LAW, PLLC
Attorney for Plaintiff
225 State Street
Carthage, New York 13619

U.S. SOCIAL SECURITY ADMIN.    GEOFFREY M. PETERS, ESQ.
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM DECISION AND ORDER[1]

    Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a

decision by the Commissioner of Social Security that Plaintiff was not disabled.  Dkt.

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Dkt. No. 5; General Order 18.

1

No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 7, 9, & 10.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted.

## I. RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born in 1961.  Dkt. No. 6, Admin. Tr. ("Tr.") at p. 152.  She is a high school graduate.  Tr. at p. 157.  She has not worked since April 2018.  *Id.*  She has past work experience as a home health aide and nursing home certified nursing assistant, and as a retail sales associate.  *Id.*  Plaintiff alleges disability based on: blindness or low vision pressure in the eyes; degenerative disc disease in the back; chronic obstructive pulmonary disease ("COPD"); chronic arthritis in the hips, back, hands, neck, and legs; chronic depression with anxiety; gastroesophageal reflux disease ("GERD"); and high cholesterol.  Tr. at p. 156.

### B.  Procedural History

Plaintiff applied for disability and disability insurance benefits on June 27, 2018.  Tr. at pp. 77-78.  She alleged a disability onset date of April 26, 2018.  *Id.*  Plaintiff's application was initially denied on September 12, 2018, Tr. at pp. 79-83, after which she requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 88-89.  Plaintiff appeared at a hearing before ALJ Dory Sutker on November 21, 2019, at which Plaintiff and a vocational expert ("VE") testified.  Tr. at pp. 29-61.  On December 4,

2019, the ALJ issued a written decision (the "2019 Decision") finding Plaintiff was not disabled.  Tr. at pp. 11-22.  On September 15, 2020, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner.  Tr. at pp. 1-5.

In 2020, Plaintiff filed suit in the Northern District of New York seeking review of the ALJ's decision (the "2020 Case").  Tr. at pp. 978-79.  The Court issued a decision remanding the matter to the ALJ for further proceedings.  Tr. at pp. 958-69; *see also* Tr. at pp. 970-71.  Plaintiff appeared at further hearings before the ALJ on August 16, 2023, and May 3, 2023, at which Plaintiff and a VE testified.  Tr. at pp. 888-935.  On January 23, 2024, the ALJ issued a partially favorable decision (the "2024 Decision").  Tr. at pp. 855-72.  On April 1, 2025, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner.  Tr. at pp. 845-50.  This action followed.

### C.  The ALJ's 2024 Decision

In her decision, the ALJ made the following findings of fact and conclusions of law.  First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023.  Tr. at p. 857.  Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  *Id.* Third, the ALJ found that, since the April 26, 2018 alleged onset date, Plaintiff has had the following severe impairments: degenerative disc disease, COPD, obesity, and knee osteoarthritis.  Tr. at pp. 857-58.  The ALJ also found that, beginning on the January 1,

2023 established onset date of disability, in addition to the aforementioned severe impairments, Plaintiff's polycythemia was also a severe impairment.  Tr. at p. 858. Fourth, the ALJ found that, since the April 26, 2018 alleged onset date, Plaintiff has not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings").  Tr. at p. 860.  Fifth, the ALJ found that, prior to January 1, 2023, the date that Plaintiff became disabled, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that:

> [she] needed the option to change positions between sitting and standing at her discretion.  She could not climb ladders, ropes, or scaffolding. She could not crawl.  She could occasionally climb ramps or stairs, and could occasionally balance, stoop, and kneel[].  [She] could not be exposed to temperature extremes or vibration, and she needed to avoid concentrated exposure to dust, fumes, odors, and other respiratory irritants.

Tr. at p. 861.  The ALJ also found that, beginning on January 1, 2023, Plaintiff, in addition to having the aforementioned RFC, would be "off-task 20% of the workday." Tr. at p. 868.  Sixth, the ALJ found that, since April 26, 2018, Plaintiff has been unable to perform any past relevant work.  Tr. at p. 870.  Seventh, the ALJ found that, prior to the January 1, 2023 established onset date of disability, Plaintiff "was an individual of advanced age," but that she "subsequently changed age category to closely approaching retirement age."  *Id.*  Eighth, the ALJ found that Plaintiff has at least a high school education.  *Id.*  Next, the ALJ found that Plaintiff "has acquired work skills from past relevant work."  *Id.*  The ALJ then determined that, based on Plaintiff's age, education,

4

work experience, and RFC, prior to January 1, 2023, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, but, beginning on January 1, 2023, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. at pp. 870-71. The ALJ, therefore, concluded that Plaintiff "was not disabled prior to January 1, 2023, but became disabled on that date and has continued to be disabled" through the date of the ALJ's 2024 Decision. Tr. at p. 872.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential

evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff raises five claims of error for review in this proceeding. First, Plaintiff argues that "[t]he ALJ failed to follow the directive from the District Court that she consider all of Plaintiff's impairments in the RFC determination regardless of their severity." Dkt. No. 7, Pl.'s Mem. of Law at pp. 14-16. Second, Plaintiff asserts that

"[t]he ALJ explicitly failed to consider the combined effects of Plaintiff's physical and mental impairments on her ability to sustain the on-task and attendance requirements of full-time work prior to January 2023." *Id.* at pp. 16-19.  Third, Plaintiff claims that "[t]he ALJ's assertion that Plaintiff's statements are not entirely consistent with the medical evidence remains unexplained and unsupported." *Id.* at pp. 19-22.  Fourth, Plaintiff argues that "[t]he ALJ failed to support her rejection of opinions from treating providers." *Id.* at pp. 22-23.  Finally, Plaintiff asserts that, "[a]t Step 5, the ALJ erroneously relied upon vocational testimony that there is only one possible occupation available, at reduced numbers, to find that Plaintiff could perform other available work." *Id.* at pp. 23-24.  Defendant responds that the ALJ properly complied with this Court's prior decision, and that substantial evidence supports the ALJ's findings at Steps Two and Five.  Dkt. No. 9, Def.'s Mem. of Law.

### A.  Consideration of Impairments in the RFC Determination

Plaintiff argues that the ALJ failed to follow the Court's prior directive instructing the ALJ to consider all of Plaintiff's impairments in the RFC determination regardless of their severity.  Pl.'s Mem. of Law at pp. 14-16.  For the reasons that follow, the Court finds no error.

### 1. Physical Impairments

Plaintiff first contends that the ALJ erred in the 2024 Decision by not considering Plaintiff's physical impairments of "bilateral carpal tunnel syndrome, diabetes, ophthalmic migraines, and blurred vision with suspected glaucoma," which the ALJ had

found to be non-severe, when determining Plaintiff's RFC. *Id.* at p. 14. In response, Defendant seeks to limit the Court's prior directive regarding the 2019 Decision to the ALJ's consideration of only Plaintiff's mental impairments and not her physical impairments. Def.'s Mem. of Law at p. 5. Defendant further asserts that, in any event, the ALJ sufficiently explained in the 2024 Decision why Plaintiff's physical impairments required no RFC limitations. *Id.* at pp. 8-11.

This Court previously concluded that the ALJ erred in the 2019 Decision by not considering Plaintiff's mental impairments, despite finding them to be non-severe, when determining Plaintiff's RFC. Tr. at pp. 964-68. That ruling comports with Second Circuit decisions that have determined that, even where substantial evidence supports an ALJ's finding that an impairment is non-severe, the ALJ must nevertheless consider such impairments when assessing the claimant's RFC. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(2)) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe [ ]' . . . when we assess your [RFC].")). The principle that an ALJ must consider a claimant's non-severe impairments when assessing the claimant's RFC is applicable not only where the impairment is mental, but also where the impairment is physical. *See, e.g.*, *Brown v. Berryhill*, 2018 WL 2979097, at *3 (W.D.N.Y. June 14, 2018) (remanding where ALJ concluded that the claimant's diabetes diagnosis was non-severe at step two, but "did not consider it when assessing [the claimant's] RFC").

9

a. Bilateral Carpal Tunnel Syndrome

Turning first to Plaintiff's alleged bilateral carpal tunnel syndrome, at Step Two, the ALJ recounted that Plaintiff "testified that she has carpal tunnel syndrome in her hands, which makes it difficult to use her hands for more than a few minutes" and that "she had surgery several years ago, but still has pain and difficulty using her hands." Tr. at p. 858. The ALJ explained that Plaintiff "was diagnosed with right carpal tunnel syndrome and had a carpal tunnel release in 2017." *Id.* The ALJ also stated that Plaintiff "complained of some tingling in her fingers and . . . exhibited positive Tinel's signs in a 2019 evaluation." *Id.*; *see also* Tr. at p. 2138.

Upon further review of Plaintiff's medical records, however, the ALJ noted that Plaintiff "did not have much treatment for carpal tunnel syndrome or related symptoms after her surgery in 2019." Tr. at p. 858. Additionally, during "consultative examinations in 2018 and 2021, [she] did not complain of difficulty with either hand and she exhibited intact hand and finger dexterity with full grip strength bilaterally." *Id.* (citing Tr. at pp. 304-15 & 2391-97). The ALJ also drew attention to the fact that Plaintiff "usually described crocheting, playing games, and working on a computer, all of which require some use of her hands." *Id.* (citing Tr. at pp. 1431 & 2385-90); *see also* Tr. at p. 2393 (stating that Plaintiff's hobbies include crocheting, sewing, and using the computer). Consequently, the ALJ concluded that the "evidence does not show that this impairment more than minimally limits [Plaintiff's] ability to perform basic work activities." Tr. at p. 858.

10

When determining Plaintiff's RFC, the ALJ did not explicitly refer to Plaintiff's carpal tunnel syndrome. *See generally* Tr. at pp. 861-70. However, the ALJ stated that Plaintiff had "full strength in all extremities and intact grip strength and normal dexterity in both hands." Tr. at p. 862 (citing Tr. at p. 308). Additionally, when discussing the opinion of Andrew Williams, M.D. ("Dr. Williams"), the ALJ recounted Dr. Williams' statement that Plaintiff "was limited for reaching, handling, fingering, and feeling," Tr. at p. 866, but concluded that this was "not consistent with or supported by the medical evidence of record," including consultative examinations, which "did not show significant upper extremity limitations and no loss of motor strength or hand dexterity," *id.* (citing Tr. at pp. 305-15 & 2385-89), as well as Plaintiff's activities, which involved gardening, weeding, mulching, and doing other household projects." *Id.* Likewise, when discussing the opinion of Elke Lorensen, M.D. ("Dr. Lorensen"), the ALJ noted that "[e]xaminations have not consistently shown significant limitations to shoulder or arm motion, loss of strength in the upper extremities, or other evidence" to support the "significant reaching restrictions" opined by Dr. Lorensen. Tr. at p. 867 (citing Tr. at pp. 1770-72, 1941, & 2391-97).

Accordingly, in determining Plaintiff's RFC, the ALJ addressed Plaintiff's bilateral carpal tunnel syndrome by considering whether Plaintiff suffered an impairment to her hands.

11

b. Diabetes

As for Plaintiff's alleged diabetes, at Step Two, the ALJ acknowledged that Plaintiff "has also been evaluated for diabetes mellitus," but that this has "been managed with medication and providers did not observe significant abnormalities." Tr. at p. 858 (citing, *inter alia*, Tr. at pp. 1878-80 (progress notes dated April 2020 stating that Plaintiff's "Type 2 diabetes mellitus" was "without complication" and "without long-term current use of insulin")). The ALJ thus concluded that "[t]he record does not show that . . . [this] condition[] limit[s] [Plaintiff]'s ability to perform work activities." *Id.*[2]

When determining Plaintiff's RFC, the ALJ did not explicitly refer to Plaintiff's diabetes. *See generally* Tr. at pp. 861-70. However, there was no need to do so. The ALJ did not need to "consider would-be impairments whose symptoms are controlled with medication." *Perez v. Colvin*, 2014 WL 4852848, at *3 (D. Conn. Sept. 29, 2014). "A successfully treated . . . impairment is *ipso facto* not an impairment." *Id.* (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)).

Plaintiff has presented no argument disputing that her diabetes has been managed with medication or otherwise explaining how her diabetes might interfere with her work-related abilities. *See generally* Dkt. No. 7. As such, there was no need for the ALJ to include any additional limitations related to Plaintiff's diabetes in the RFC determination. *See, e.g.*, *Jones v. Comm'r of Soc. Sec.*, 2018 WL 3829119, at *3

---

[2] The ALJ made the same findings with regard to Plaintiff's alleged hypertension, GERD, and hyperlipidemia. Tr. at p. 858. Plaintiff does not appear to challenge the ALJ's treatment of these alleged impairments. *See generally* Dkt. Nos. 7 & 10.

(W.D.N.Y. Aug. 13, 2018) (holding that "Plaintiff . . . has not demonstrated that the ALJ should have included any additional limitations in his RFC analysis as a result of Plaintiff's headaches" where "Plaintiff's headaches ceased when he took his psychiatric medications as prescribed" and "Plaintiff has not proffered any explanation for how headaches that are completely controlled by medication might interfere with his work-related abilities").

Accordingly, the ALJ did not need to explicitly refer to Plaintiff's diabetes in the RFC determination because Plaintiff's diabetes was managed with medication.

### c. Ophthalmic Migraines and Blurred Vision with Suspected Glaucoma

The ALJ recognized that Plaintiff was evaluated for "ophthalmic migraines . . . and blurred vision and providers noted that she was a glaucoma suspect." Tr. at p. 859 (citing Tr. at pp. 1519-46). On the other hand, however, the ALJ noted that: "examinations showed 20/20 vision with correction, with no evidence of retinopathy or other long-term vision deficits," *id.* (citing Tr. at pp. 2034-37); "[Plaintiff] had laser surgery for her glaucoma in 2020 with no negative effects," *id.* (citing Tr. at pp. 2391-97); "[s]he did not complain of ophthalmic migraines on a long-term basis"; and "[her] ophthalmologist opined that [her] eye impairments caused no functional limitations." *Id.* (citing Tr. at pp. 1551-54).

"While remand is necessary where an ALJ's RFC determination fails to account for greater-than-minimal limitations stemming from a plaintiff's non-severe impairments, here there was no evidence of record suggesting that any such limitations

13

existed." *Suzanne H. v. Comm'r of Soc. Sec.*, 2021 WL 5309718, at *6 (W.D.N.Y. Nov. 15, 2021). Indeed, Plaintiff has not argued that her migraines or blurred vision interfere with her work-related abilities. *See generally* Dkt. No. 7. Further, as noted by Defendant, "Plaintiff points to nothing suggesting greater limitations from these conditions." Def.'s Mem. of Law at p. 9 (citing Pl.'s Mem. of Law at pp. 14-16).

Accordingly, the ALJ supported with substantial evidence her finding that Plaintiff's ophthalmic migraines and blurred vision with suspected glaucoma did not cause functional limitations, and Plaintiff has not presented evidence to the contrary.

### 2. Mental Impairments

Plaintiff also maintains that the ALJ's consideration of Plaintiff's mental impairments in the 2024 Decision was "cursory" and "inadequate." Pl.'s Mem. of Law at pp. 15-16. More specifically, Plaintiff insists that the ALJ's RFC analysis in the 2024 Decision did not address the worsening of Plaintiff's depression and anxiety. *Id.* Defendant, on the other hand, contends that the 2024 Decision complies with the Court's directive "by providing a lengthy and robust analysis of the impact of Plaintiff's mental impairments on the RFC finding." Def.'s Mem. of Law at pp. 8-11.

Here, the ALJ found that Plaintiff's "mental impairments of depressive disorder and anxiety disorder . . . did not cause more than minimal limitation in [her] ability to perform basic mental work activities and was therefore nonsevere." Tr. at p. 859. In making this determination, the ALJ expressly "considered the four broad areas of mental functioning set out in the disability regulations." *Id.*

14

When determining Plaintiff's RFC, the ALJ stated that, "[c]onsistent with the District Court's Order, the [ALJ] ha[d] considered [Plaintiff's] mental impairments in evaluating [her] [RFC]," but concluded that "the medical evidence of record does not support any additional limitations in the [RFC] related to [Plaintiff's] mental impairments." Tr. at p. 864. The ALJ explained that Plaintiff "complained of depression and anxiety related to her pain and a history of trauma" and "exhibited a depressed or anxious mood at times," but "overall . . . appeared stable with a[] normal mood at times and no notable cognitive deficits." Tr. at pp. 864-65.

The ALJ noted that, "[i]n a 2018 consultative examination, [Plaintiff] complained of poor sleep, depression, and anxiety, but she had a normal appearance, normal speech, . . . was polite and cooperative, with a depressed mood, normal attention and memory, and good insight and judgment." Tr. at p. 865. While Plaintiff "reported periodic increased . . . depression over time, . . . [m]ental status examinations showed no change despite these increased complaints, as she was usually polite and cooperative, with normal speech, good concentration, and good mood." *Id.* Additionally, the ALJ discussed a 2021 consultative examination, stating:

> [Plaintiff] complained of depression, anxiety, low motivation, fatigue, and nervousness in crowds, but she denied any thought disorder or cognitive deficits. [She] reported being mildly irritable, but she interacted well with Dr. Alexander, who observed good grooming and hygiene, and normal speech. [Her] memory appeared mildly impaired due to nervousness, but she generally had intact memory and concentration, with average cognitive functioning, and good insight and judgment. [She] reported that she could cook, clean, do laundry, shop, handle personal care, watch television, work on her computer, and play games.

15

*Id.* The ALJ also considered later evaluations, which the ALJ stated revealed that, while Plaintiff "complained of periods with increased anxiety and depression, . . . she reported some improvement with medication" and "[m]ental status examinations showed no significant change over time." *Id.*

The ALJ acknowledged that Plaintiff's "depression and anxiety caused some persistent symptoms," but concluded that she "has been able to manage these symptoms on a daily basis with counselling and medication." *Id.* While Plaintiff "alleged memory and concentration problems, . . . examinations consistently showed normal functioning in these areas." *Id.* The ALJ also noted that Plaintiff "has been able to manage daily activities from a cognitive standpoint, as she can do chores, manage finances, go shopping, and even direct her husband in tasks when necessary." *Id.*

The ALJ considered the state agency psychological consultants' prior administrative findings and found them to be persuasive. Tr. at p. 867. The ALJ explained that each consultant "found that [Plaintiff] had no more than a mild limitation in any area of mental functioning and did not assess any functional limitations related to mental impairments." *Id.* The ALJ also noted that "[t]he consultative examinations showed normal behavior and largely normal memory and concentration," and "[o]ther mental status examinations also showed few abnormalities," which the ALJ explained "supports a finding that [Plaintiff]'s mental impairments do not result in any functional limitations." *Id.*

Additionally, the ALJ considered the opinions of Dennis Noia, Ph.D. ("Dr. Noia"), and Dante Alexander, Psyd. ("Dr. Alexander"). *Id.* The ALJ recounted Dr. Noia's opinion that Plaintiff "had mild limitations for understanding, remembering, or applying complex instructions, mild limitations for regulating emotions, controlling, behavior, and maintaining well-being, with no limitations in any other areas." *Id.* The ALJ also discussed Dr. Alexander's opinion that Plaintiff "had mild limitations for interacting with others, and regulating emotions controlling behavior, and maintaining wellbeing, but not limitations in any other areas," and noted that he stated that Plaintiff's "psychiatric problems did not appear significant enough to interfere with [her] ability to function on a daily basis." *Id.* The ALJ thereby concluded that Plaintiff's "mental impairments do not cause any functional limitations." *Id.*

The ALJ was not as persuaded by the moderate limitations opined by Alex Dickinson, LCSW ("Mr. Dickinson") and Ronald Thesee, M.D. ("Dr. Thesee"). Tr. at pp. 867-68. "Mr. Dickinson opined that [Plaintiff] had no more than a mild limitation for understanding, remembering, and carrying out instructions and making judgments on complex work-related decisions," and found that she "had moderate limitations for interacting with others or responding to usual work situations and changes in a routine work setting." *Id.* "Dr. Thesee opined that [Plaintiff] had moderate limitations for making judgment on work-related decisions with no more than mild limitations in any other areas." Tr. at p. 868. The ALJ found these opinions "not entirely consistent with or supported by the medical evidence of record." *Id.* Among other things, the ALJ

17

noted that mental status examinations showed that Plaintiff had "normal cognitive functioning" and "normal concentration," as well as "few abnormalities." *Id.* The ALJ also noted that Mr. Dickinson and Dr. Thesee provided their opinions in a checklist style form that did not provide many objective findings or cite to other evidence in support. *Id.*

Thus, as correctly stated by Defendant:

the ALJ explicitly considered Plaintiff's non-severe mental impairments beyond step two. And there was nothing "cursory" or "woefully inadequate" about the ALJ's lengthy discussion of Plaintiff's non-severe mental impairments in the RFC portion of the decision.

Def.'s Mem. of Law at p. 7.

**B. Consideration of the Combined Effects of Plaintiff's Impairments**

Plaintiff asserts that the ALJ "did not consider the impact of all Plaintiff's impairments in combination when assessing RFC," but rather "segregate[d] the effects of each impairment." Pl.'s Mem. of Law at p. 16. In particular, Plaintiff complains that:

the ALJ failed to consider how Plaintiff's "non-severe" but worsening depression and anxiety, combined with Plaintiff's multiple physically debilitating musculoskeletal and respiratory impairments, impact her ability to remain on task sufficiently to sustain non-exertional work-related activities . . . . Nowhere in the portion of her decision devoted to explaining why Plaintiff was *not* disabled did the ALJ wrestle with the issue of whether Plaintiff . . . would be able to sustain work-related activities and functions throughout a work week – five days straight, for eight hours per day.

*Id.* at p. 17 (emphasis in original). Defendant responds that "the ALJ properly and explicitly considered Plaintiff's mental complaints in combination with her complaints

18

of physical pain and fatigue when evaluating her RFC prior to January 1, 2023," but "reasonably concluded that no disabling limitations were warranted." Def.'s Mem. of Law at p. 13 (citing Tr. at pp. 864-65 (ALJ noting Plaintiff "complained of depression and anxiety related to her pain" and that complaints of "fatigue" related to depression and anxiety")). The Court finds Plaintiff's argument to be unfounded.

"An ALJ is obligated to consider the combined effect of a claimant's physical and mental impairments." *Kelly C. v. Comm'r of Soc. Sec.*, 2023 WL 3343908, at *5 (W.D.N.Y. May 10, 2023) (citing 20 C.F.R. §§ 404.1523(c), 416.923(c)). "As the Second Circuit has noted, an ALJ 'must evaluate [the physical and mental impairments'] combined impact on a claimant's ability to work, regardless of whether every impairment is severe.'" *Id.* (quoting *McIntyre v. Colvin*, 758 F.3d 146, 151-52 (2d Cir. 2014)) (alteration in original). The ALJ did precisely that here.

In *Joseph C. v. Comm'r of Soc. Sec.*, the plaintiff argued that "the ALJ erred by failing to 'adequately consider' the combined effect of Plaintiff's severe and non-severe impairments when making the RFC finding." 2024 WL 4043185, at *11 (W.D.N.Y. Sept. 4, 2024). The court found that there was "no merit to [p]laintiff's contention" because, among other things, "[t]he ALJ expressly noted the ALJ's obligation to consider 'all of the claimant's impairments, including impairments that are not severe.'" *Id.* The court further explained that it was "fallacious for Plaintiff to argue that the absence of additional limitations in the RFC finding to account for his mild mental limitations proves that the ALJ failed to properly consider his non-severe impairments."

19

*Id.*  Here, like in *Joseph C.*, the ALJ expressly noted her obligations to, among other things, "consider all of the claimant's impairments, including impairments that are not severe," Tr. at p. 857, and "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." Tr. at p. 861. The ALJ also stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. at p. 861. She further explained that she determined Plaintiff's RFC "based upon review of the complete record as well as consideration of all opinions within the record, the testimony of the claimant, and the claimant's severe and nonsevere impairments." Tr. at p. 870.

Additionally, in *Kelly C. v. Comm'r of Soc. Sec.*, in response to plaintiff's argument that "the ALJ failed to consider the combined impact of her physical and mental impairments on her ability to work," the court noted that the ALJ had "concluded that [claimant's] severe impairments, either singularly or in combination, did not meet or medically equal the severity of a listed impairment." 2023 WL 3343908, at *5. Here, like in *Kelly C.*, the ALJ concluded that, "[s]ince April 26, 2018, [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [the Listings]." Tr. at p. 860.

Further, while the ALJ stated that she "considered [Plaintiff's] reported pain and other symptoms" and acknowledged that "all of these factors affect her [RFC]," the ALJ determined that "the objective findings in the medical evidence of record do not support

20

greater limitations than those outlined." Tr. at p. 864. In analyzing each of Plaintiff's alleged impairments, the ALJ provided a detailed discussion explaining why evidence in the record did not support greater limitations than those contained in the RFC. Tr. at pp. 862-68. Among other things, the ALJ repeatedly drew attention to the fact that Plaintiff "has been able to handle daily activities independently," Tr. at p. 860, and had "good activity levels." Tr. at p. 864. Specifically, the ALJ described how Plaintiff "engaged in both indoor and outdoor activities despite her pain complaints," including:

> doing household projects, spending time with her grandchildren, mowing, . . . gardening, . . . weeding[,] . . . cooking, doing some chores, shopping, crocheting, . . . working on her computer[,] . . . manag[ing] finances, . . . and even direct[ing] her husband in tasks when necessary.

Tr. at pp. 864-66.

"[I]t was within the ALJ's purview to review all the evidence before h[er] (including the various opinions of record), resolv[e] any inconsistencies therein, and mak[e] a determination consistent with the evidence as a whole." *Marion A. v. Comm'r of Soc. Sec.*, 2019 WL 13499951, at *12 (N.D.N.Y. Mar. 28, 2019) (citing cases). "[Plaintiff's] suggestion that the ALJ did not consider the combined effect of her physical and mental impairments is grounded in little more than speculation," and appears to "boil[] down to a disagreement with the ALJ's analysis and weighing of the evidence." *Kelly C. v. Comm'r of Soc. Sec.*, 2023 WL 3343908, at *5. "However, it is not the function of this Court to reweigh the evidence—so long as the ALJ's conclusions are supported by substantial evidence (which the Court has already found for the reasons

21

set forth above), they must be affirmed." *Kimberly H. v. Comm'r of Soc. Sec.*, 671 F. Supp. 3d 328, 338 (W.D.N.Y. 2023) (citing *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)).

To the extent that Plaintiff's argument centers on the fact that, beginning on January 1, 2023, the ALJ added to Plaintiff's RFC the additional limitation of Plaintiff being "off-task 20% of the workday," Tr. at p. 868, and questions why the ALJ did not find that the same limitation existed prior to January 1, 2023, *see* Pl.'s Mem. of Law at pp. 17-18, the Court need look no further than the ALJ's decision for an explanation. As previously stated, the ALJ did not find that, prior to January 1, 2023, the evidence in the record supported greater limitations than those contained in the RFC. *See supra* at pp. 21-22. Further, in her decision, the ALJ stated that January 2023 blood testing confirmed that Plaintiff had polycythemia. Tr. at p. 869. The ALJ explained that it was this "newly developed polycythemia," combined with "some increased respiratory symptoms" and Plaintiff's "pain and overall fatigue from all of her impairments," that "support[ed] a finding that [Plaintiff] would be significantly off-task in a work environment," not her prior "musculoskeletal impairments." *Id.*; *see also* Tr. at p. 870 (explaining that medical opinions that "support a finding that [Plaintiff] could not sustain work activities on a regular and continuing basis" were "more persuasive in the context of the [Plaintiff]'s new diagnosis and increase symptoms during the relevant period").

22

Accordingly, the ALJ did not fail to consider the combined effects of Plaintiff's physical and mental impairments on her ability to work prior to January 2023.

### C. Consistency of Plaintiff's Statements with the Medical Evidence

Plaintiff claims that "the ALJ is required to take into account Plaintiff's subjective complaints of various symptoms," and erred in her determination that the evidence only partially supports Plaintiff's claims. Pl.'s Mem. of Law at pp. 19-20.

Plaintiff contends that "the ALJ appeared to subscribe to the mistaken notion that a finding of disability requires that an individual be unable to function 24 hours a day, seven days a week, with no waxing and waning of symptoms." *Id.* at p. 20. More specifically, Plaintiff remarks that the ALJ: "suggest[ed] that significant degenerative changes in the lumbar spine are canceled out by an absence of nerve root compression or objective evidence of abnormalities in the cervical spine or shoulders"; "suggested that findings of abnormal gait are simply canceled out by other findings of normal gait"; "noted rare respiratory exacerbations prior to January 2023 but did not explain just how many exacerbations would be necessary for her to determine that Plaintiff's ongoing respiratory impairments interfered with work functioning"; and "went on at length about Plaintiff's ability to engage in some of the most basic activities of daily living, including spending time with grandchildren, cooking, and participating in some household chores." *Id.* (citing Tr. at p. 864). Initially, the Court notes that these examples do not appear to relate to Plaintiff's subjective complaints but rather are seemingly based on objective evidence in the record. *See Regan v. Astrue*, 2010 WL 1459194, at *10

(E.D.N.Y. Apr. 12, 2010) (distinguishing subjective complaints from "clinical findings consistent with laboratory and diagnostic tests"). In any event, the Court addresses each of Plaintiff's examples in turn, and finds that none amount to reversible error on the part of the ALJ.

First, with regard to the ALJ's findings regarding Plaintiff's lumbar spine and gait, Plaintiff appears to simply take issue with how the ALJ weighed conflicting evidence in the record. "The ALJ must weigh all the available evidence . . . to make an RFC finding consistent with the record as a whole and may resolve disputes between conflicting evidence." *Santiago v. Comm'r of Soc. Sec.*, 2020 WL 1922363, at *7 (S.D.N.Y. Apr. 21, 2020). That is precisely what the ALJ did here. It is not the role of a court to "re-weigh evidence," *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (quotation and internal quotation marks omitted), because "a reviewing court 'defer[s] to the Commissioner's resolution of conflicting evidence'" where that resolution is supported by substantial evidence. *Id.* (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)).

As for Plaintiff's respiratory exacerbations, Plaintiff seeks to impose a requirement on the ALJ that does not exist, as the ALJ had no obligation to expressly specify "how many exacerbations would be necessary for her to determine that Plaintiff's ongoing respiratory impairments interfered with work functioning." Pl.'s Mem. of Law at p. 20. The ALJ sufficiently explained that Plaintiff's "respiratory function remained steady . . . ,without many exacerbations" and that she "rarely

24

experienced any exacerbations," Tr. at p. 864, and further noted that Plaintiff "has not had exacerbations requiring hospitalizations or emergency treatment." Tr. at p. 861.

The ALJ also did not err by considering Plaintiff's daily activities. In fact, "[t]he Regulations state that it is appropriate for the ALJ to consider a claimant's daily activities when evaluating . . . subjective symptoms." *Thomas F.W. v. Comm'r of Soc. Sec.*, 2022 WL 22329498, at *3 (N.D.N.Y. Sept. 20, 2022) (citing 20 C.F.R. § 404.1529(c)(3)(i)). "Plaintiff's daily activities were relevant to making an accurate assessment of h[er] abilities and limitations, and the ALJ found that Plaintiff's daily activities were not entirely consistent with h[er] alleged symptoms." *Id.*

Insofar as Plaintiff takes issue with the ALJ "noting that Plaintiff had declined referrals for several of her alleged symptoms, suggesting less severe symptoms than alleged," Pl.'s Mem. of Law at p. 21 (citing Tr. at p. 864), the Court again finds no error. Courts in the Second Circuit "have specifically recognized that a pattern of conservative medical treatment . . . . is a proper factor for an ALJ to consider." *Thomas v. Comm'r of Soc. Sec. Admin.*, 479 F. Supp. 3d 66, 89 (S.D.N.Y. 2020) (quotation, internal quotation marks, and citation omitted) (cleaned up).

### D. Rejection of the Opinions of Plaintiff's Treating Providers

Plaintiff argues that the ALJ erred by rejecting the opinions from Plaintiff's treating providers, Dr. Williams and Dr. Thesee. Pl.'s Mem. of Law at pp. 17-21. The Court disagrees.

25

"[U]nder the Social Security Administration's latest regulations, which apply because [Plaintiff] filed her claim for benefits after March 27, 2017, no special deference is given to the opinion of the treating physician." *Tibbles v. Comm'r of Soc. Sec.*, 2023 WL 3477127, at *2 (2d Cir. May 16, 2023) (citation omitted); Tr. at pp. 77-78 (indicating that Plaintiff filed her claim for benefits on June 27, 2018).  Instead, ALJs are "to consider the submitted medical opinions based on several factors set forth in the regulations and to explain how the two most important factors – supportability and consistency – applied to each opinion." *Rushford v. Kijakazi*, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023) (quotations omitted).  Plaintiff acknowledges this standard. Pl.'s Mem. of Law at p. 22 (stating that "the ALJ is no longer required to accord great deference to treating source opinions," but arguing that the ALJ "must properly consider the supportability of that opinion and whether it is consistent with the evidence of record").

Here, in finding the opinions of Dr. Williams and Dr. Thesee unpersuasive, the ALJ properly explained how the opinions are not supported by objective evidence and not consistent with other opinions of record.  With regard to Dr. Williams, the ALJ recounted Dr. Williams' opinion that Plaintiff would be: "incapable of even the minimal requirements of the sedentary exertional level, suggesting significant restrictions for sitting, standing, and walking, while needing a cane to walk even short distances"; "limited for reaching, handling, fingering, and feeling"; and able to "only climb three steps and never perform other postural maneuvers, while never tolerating most

environmental conditions." Tr. at p. 866. The ALJ acknowledged Dr. Williams' role as Plaintiff's "primary care provider," but concluded that his opinions were "not consistent with or supported by the medical evidence of record." *Id.*

More specifically, the ALJ explained that the restrictions imposed by Dr. Williams were inconsistent with the consultative evaluations, which "did not show significant upper extremity limitations and no loss of motor strength or hand dexterity," *id.* (citing Tr. at pp. 305-15 & 2385-89), and "many" of which "showed no gait or balance problems and no need for a cane," *id.* (citing Tr. at pp. 1317, 1363-64, 1704, 1733, & 1765), as well as "[m]ore recent pain evaluations," which "only showed a slight right leg weakness at most, with good motion and strength in both upper extremities and still a normal gait." *Id.* (citing Tr. at pp. 1729-34 & 1765-68). Additionally, the ALJ found the "limitations . . . inconsistent with [Plaintiff]'s activities during this time, including gardening, weeding, mulching, and doing other household projects." *Id.* The ALJ also noted that "Dr. Williams provided his opinion in checklist-style forms, with little reference to any objective findings to support his assessments." *Id.* Further, as observed by Defendant, Dr. Williams "left blank *every* section on *every* page asking for medical or clinical findings supporting the identified limitations." Def.'s Mem. of Law at p. 19 (citing Tr. at pp. 371-76, 725-30, 1478-83, & 1570-75) (emphasis in original).

Likewise, with regard to Dr. Thesee, the ALJ discussed how Dr. Thesee opined that Plaintiff "had moderate limitations for making judgment on work-related decisions with no more than mild limitations in any other areas," and noted Plaintiff's "report that

she has difficulty concentrating and struggles prioritizing and completing tasks." Tr. at p. 868. The ALJ found this "assessment . . . not entirely consistent with or supported by the medical evidence of record." *Id.* The ALJ explained that Plaintiff's mental status examinations "consistently showed" that Plaintiff "had normal concentration and showed few abnormalities," *id.* (citing Tr. at pp. 1371, 1374, 1379, 1404, 1408, 1415, 1441, 1446-47, & 2640-49), and "[c]onsultative examinations also showed few abnormalities in examinations." *Id.* (citing Tr. at pp. 295-300 & 2385-90). The ALJ also noted that "Dr. Thesee provided his opinion in a checklist style form and did not provide any other support for this opinion." *Id.*

Accordingly, the ALJ adequately explained her consideration of the factors of supportability and consistency in her rationale for finding the restrictions that Dr. Williams and Dr. Thesee assessed to be unpersuasive.

### E. VE Testimony

Plaintiff asserts that the VE was "required to identify at least three available jobs," Pl.'s Mem. of Law at p. 23, but was "unable to provide more than one representative occupation," and "was also vague about the number of jobs available and the extent to which those numbers would be reduced by a 'sit/stand option.'" *Id.* at p. 24. This argument is without merit.

Here, at Step Five of the sequential analysis, the ALJ relied on the testimony of the VE in determining that, prior to January 1, 2023, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Tr. at

28

pp. 870-71.  Upon considering Plaintiff's RFC, the VE testified that Plaintiff could perform the job of "customer order clerk."  Tr. at p. 54.  With regard to Plaintiff's argument as to the number of jobs identified by the VE, the Court finds no error, as "[t]he Commissioner need show only one job existing in the national economy that [Plaintiff] can perform."  *Shana H. v. Comm'r of Soc. Sec.*, 2026 WL 592605, at *5 (N.D.N.Y. Mar. 3, 2026) (alteration in original) (quoting *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011)) (citation and internal quotation marks omitted).  In fact, Plaintiff acknowledges that "courts in the Second Circuit have allowed a vocational expert to offer fewer than three representative jobs."  Pl.'s Mem. of Law at p. 23.

As for Plaintiff's argument regarding the VE's alleged vagueness about the number of customer order clerk jobs available, *id.* at p. 24, the Court again finds no error.  The VE testified that there are 62,000 customer order clerk jobs nationally.  Tr. at pp. 54-55.  The VE also explained that the job of customer order clerk "is a sedentary exertion level."  Tr. at p. 54.  In response to the ALJ's hypothetical regarding an individual who would need (1) "a sit/stand option at the individual's discretion" and (2) "to change position after 20 minutes," the VE indicated that those limitations would likely reduce the number of jobs by ten percent, Tr. at pp. 56-57, thereby yielding approximately 55,800 jobs nationally.  As such, the VE's testimony as to the number of jobs available was not vague.[3]

---

[3] Notably, as Defendant correctly points out, Plaintiff seemingly "does not challenge the ALJ's finding that the Customer Order Clerk occupation exists in significant numbers in the national economy."  Def.'s Mem. of Law at p. 22.

29

Finally, Plaintiff argues that "the hypotheticals posed by the ALJ to the VE . . . did not accurately portray Plaintiff's physical and mental impairments," and complains that the ALJ did not pose certain hypotheticals to the VE.  Pl.'s Mem. of Law at p. 24.  For the reasons explained more fully in the preceding sections, Plaintiff has not pointed to a reversible error in the ALJ's RFC finding.  *See supra* at pp. 8-28.  As correctly noted by Defendant, impairments not adopted in the RFC need not be included in the ALJ's hypothetical questions to the VE.  Def.'s Mem. of Law at p. 23 (citing, *inter alia*, *Priel v. Astrue*, 453 F. App'x 84, 87-88 (2d Cir. 2011) (summary order) ("[T]he ALJ properly declined to include in her hypothetical question symptoms and limitations that [she] had reasonably rejected.")).

Accordingly, the ALJ did not err by relying upon the VE's testimony to determine that, prior to January 1, 2023, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

### IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision partially denying Plaintiff disability benefits is **AFFIRMED** and the Complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated:  May 28, 2026
          Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge